ASHELMAN BROTHERS, Inc., a Corporation, Appellant, v. R. B. SIEBOLD and The Fried Company, a Corporation. THE FRIED COMPANY, a Corporation, Respondent.

(203 N. W. 176.)

**Corporations — corporation held bound by guaranty of note by officer and manager taken under his contract which had been ratified.**

In an action against a corporation as an indorser of a guaranty of payment upon a note to which its name was attached by its vice president, a manager of its business, the note having been taken from a customer and made payable to a third party with whom the same officer and manager had entered into a contract, on behalf of the corporation, to handle the products of the payee as a dealer on commission, the evidence is examined, and it is *held:*

(a) That the evidence shows a ratification of the contract so made.

(b) That by reason of the ratification the defendant corporation became bound upon the indorsement.

Opinion filed March 21 1925. Rehearing denied April 6, 1925.

Corporations, 14a C. J. § 2213 p. 353 n. 70; § 2788 n. 741 n. 18; § 2932 p. 858 n. 97.

Appeal from the District Court of Stutsman County, *Coffey*, J. Reversed and remanded.

*Hoopes & Lanier*, for appellant.

The knowledge of the Vice President of the receipt of and payment of earnest price will be presumed to be the knowledge of the company, and its retention will amount to a ratification of the contract. 29 N. D. 497.

Where, as in this case, a corporation has the inherent power ...e negotiable instruments any of its officers or agents assume to issue such papers the presumption is conclusive in favor of the innocent holder that such officer has authority.

A corporation cannot ignore the negligence of its officers and profit by their omission of duty. Armstrong v. Chemical Nat. Bank, 27 C. C. A. 601; Martin v. Webb, 110 U. S. 14, 28 L. ed. 52, 3 Sup. Ct. Rep. 428; Thorinton v. Gould, 41 Ala. 461; Hennessy Bros. & Co. v. Memphis Nat. Bank, 64 C. C. A. 125; Whidicker v. Kilroy, 70 Mich. 645, 38 N. W. 608.

Corporations are only capable of speaking through their officers and agents and parties dealing with them have the right to rely upon their statements and the appearances existing.

Parties so dealing do not go elsewhere for information. Tunison v. Detroit & L. S. Copper Co. 73 Mich. 452; Leroy & C. Valley Co. v. Bidell, 13 C. C. A. 388, 66 Fed. 31; Page v. Fall River R. R. Co. 31 Fed. 257; 10 Cyc. 111.

Principal cannot take benefits of and repudiate unauthorized agency. Wykoff v. Johnson (S. D.) 48 N. W. 837; Union Trust Co. v. Phillips, 63 N. W. 903.

One holding out another as agent; how far bound by agent's act. Aldrich v. Wilmarth (S. D.) 54 N. W. 811.

What amounts to ratification of unauthorized execution of written instrument. 27 Am. Dec. 343.

Though the ordinary executive officer of a corporation, such as its president does not, ex officio, have authority to bind the corporation by contract, in harmony with the general custom of conducting business, he is presumed to have had such authority conferred upon him. Trust Co. v. Van Valkenbyrg, 112 N. W. 1083.

A corporation is liable on a contract within the scope of the cor-

porate business, made by a superintendent and manager appointed to do the general work and keep the books of the concern. Whitaker v. Kilroy, 38 N. W. 606.

*Knauf & Knauf,* for respondent.

It is an elementary principle of law that questions which were not presented to the trial court below may not be reviewed on appeal. The trial court cannot be guilty of errors in rulings they have never made upon issues that were never presented to them. Lesser Cotton Co. v. St. L. T. M. & S. R. Co. 114 Fed. 133, 52 C. C. A. 95; People's Tel. & Tel. Co. v. East Tennessee Tel. Co. 103 Fed. 212; Ames v. Farrelley, 121 Fed. 258.

That anyone dealing with a supposed agent is bound to ascertain the scope of his authority to act, otherwise he assumes the risk and must suffer the consequences. Cornish v. Wolverton, 108 Am. St. Rep. 613, 81 Pac. 4; Siebold v. Davis, 25 N. W. 778.

When a note is executed by an agent whose authority for that purpose is denied the burden of proving such authority rests upon the person seeking payment of the note. Miller v. Howe, 25 N. W. 899.

An agent can only act and contract for his principal within the limits of his authority. Swindell v. Latham, 122 Am. St. Rep. 534.

BIRDZELL, J. This is an action upon a promissory note made by the defendant Siebold and bearing the indorsement of the Fried Company, Inc., by Fred O. Fried. The maker defaulted and the Fried Company defended on the ground that the indorsement was not authorized. A trial was had in the district court of Stutsman County before the court without a jury.

The following facts appeared upon the trial of the action: The Fried Company, during the period of this controversy, was a corporation transacting business at Wimbledon, Jamestown and Spiritwood, North Dakota. Its officers were: president, Anton Fried; vice president, Fred O. Fried; secretary, Milton T. Chase; treasurer, Milton T. Chase, and the directors were Anton Fried, Fred O. Fried and Milton T. Chase. In May, 1920 a contract, purporting to be between Ashelman Brothers, Inc., of Fargo, and the Fried Company of Jamestown, was signed on behalf the latter company by Fred O. Fried. In this contract the Fried Company was appointed as dealer in Delco

Light products within a territory comprising all of Stutsman county with the exception of certain named townships and embracing also some townships in the adjoining county of Kidder. Under the contract the distributor was to pay cash in advance, f. o. b. Dayton, Ohio, at a scheduled rate for the products of the Delco Light Company, subject to certain discounts. Operating under this contract a light plant was sold to the defendant Siebold who gave his note therefor in the sum of $595.00, dated November 24, 1920 and payable October 1, 1921 to the order of Ashelman Bros., Inc. This note was indorsed "Payment guaranteed. The Fried Company, Inc., By Fred O. Fried." When this note matured it was not paid and the efforts of the payees to secure payment by the maker proved futile. Consequent upon the failure of the maker to pay, various letters were written by the payee to Fred O. Fried and to the Fried Company addressed Spiritwood. These letters apprised the addressees of the inability of the holder to make collection from Siebold, called attention to the indorsement and to the fact that the indorser was interested in the note to the extent of 20 per cent commission due under the contract and expressed a willingness to send the note to the addressee upon receipt of a check for the net amount due the payee. In an answer to one of these letters, which answer was signed "Fred Co. By M. Kallgren," it was stated "We were not aware that you were holding a note indorsed by us against this party, but upon taking the matter up with Fred Fried, who was interested in the Fried Company at that time, we find that there is such a note outstanding against this party and you are holding the same." It was then explained that Mr. Anton Fried was ill in a hospital and Mr. Chase had not had the Spiritwood matters to look after and that while collections were poor they expected to send a man out in a few days who would see Siebold and try to get results.

Upon the trial there was evidence that when the Fried Company was organized, shortly before the period of the transactions in question, it was desired to reduce the stocks that were on hand at various places and that at a directors' meeting resolutions had been passed looking toward this end; that these resolutions, passed December 4, 1919, appointed Fred O. Fried as sales manager at Spiritwood, Jamestown and Eckelson to continue the business and dispose of the stock as rapidly as possible. It was further provided that Chase should

have full charge of the buying of the merchandise for all of the branches and the main store; that Fred O. Fried should have authority to sign checks on the bank accounts at Spiritwood, Eckelson and Jamestown, and Chase should have authority to sign checks on the banks at Wimbledon; and that Anton Fried and Chase, secretary and treasurer, should have authority to sign notes, mortgages, seed liens and other instruments necessary to conduct the business. There was further testimony given by the witnesses for the defendant, namely Chase, Anton Fried and Margaret Kallgren, with reference to the limitations upon the authority of Fred O. Fried, which is consistent with the motions and resolutions passed at the directors' meeting in December, 1919. The testimony of Anton Fried is, perhaps, the strongest of any of these witnesses. He testified, in substance, as follows: That Fred O. Fried had no authority to enter into any new contracts for the purchase of new material; that that authority was expressly limited to Chase and himself; that Fred Fried was not authorized by the company or the directors or the officers to enter into the dealer's contract in question; that he had never seen the contract until he saw it in court and did not know of its existence; that Chase and himself were alone authorized to execute notes for the Fried Company, and, specifically, that Fred Fried was not so authorized; that he had never seen the note until suit was brought against the company and that he had had no knowledge of it; that the indorsement was made without the knowledge or consent of the company; that he knew about this Delco Light business but that Fred had that; that that was his business.

It further appeared that in a statement rendered to the Bradstreet Company and signed "The Fried Co., By M. T. Chase, Sec'y and Treas., dated February 1, 1921," the business of the Fried Company was described as follows: "Hardware, implements, autos and tractors, Delco Lights" and that in this statement the names of the officers were given as above stated, and in the blank opposite "Manager" was written "Fred O. Fried at Spiritwood and Jamestown; Milton T. Chase at Wimbledon." In the blank for describing the other interests of the principal directors, the word "farming" alone appears. There was also introduced in evidence a letter, dated Spiritwood, signed "The Fried Co." and apparently dictated by Fred O. Fried, which is

written upon a letterhead of the Fried Company. In this letterhead the company is described, in the upper left portion, as "Dealers in Implements, Tractors, Hardware, Harness, Automobiles and Accessories, Gargoyle Mobiloils, Distributors for Maytag Washers, De Laval Cream Separators," and on the opposite side of the page is printed the following:

"AUTHORIZED.

"Delco Light Products, Sales and Service, Electrical Supplies, Deering and McCormick Binders, Twin City Engines and Separators, Ford and Reo Automobiles and Trucks."

In this letterhead which was used on January 4, 1922, the name of Fred O. Fried appears as vice president, but it is x'd out.

The only difficulty presented in this record is that of applying elementary principles to the facts in the instant case. The facts are not in serious dispute. We may well assume that the authority of Fred O. Fried to transact business for the corporation was limited in the manner indicated by the motions and resolution passed at the directors' meeting shortly after the corporation was organized. We must further assume that so far as these limitations circumscribed his authority to transact business for the corporation as a manager, they were in the nature of secret limitations and would not control as against an ostensible authority. Whether the ostensible authority, however, would extend far enough to authorize, in the first instance, the entering into the dealer's contract in question, may well be doubted; but we are of the opinion that the evidence strongly preponderates in favor of the ratification of this contract. The statement rendered to the Bradstreet Company by the secretary and treasurer describes the Fried Company as handling Delco Lights, and the printed letterhead referred to above, as well as the letter written by Mrs. Kallgren with reference to the note in question, all taken together afford very satisfactory evidence that the Fried Company, through the contract in question, became interested in the handling on commission of Delco Lights, by ratification, if not by original authorization. Being so interested, when through the activity of one of its officers and a manager it sold a Delco plant and used the note of the purchaser in lieu of its own cash payment for the plant, guaranteeing payment and retaining an interest of 20 per cent

in the note as its commissions, it became bound by the indorsement. If the company, in furnishing the plant in question, had obtained it on its own credit and taken Siebold's note for the retail price thus including its own commission, the transaction would not have been substantially different.

Being of the opinion that the evidence clearly preponderates in favor of the ratification of the contract in question, it follows that the judgment in favor of the defendant company must be reversed and the cause remanded with directions to enter judgment for the plaintiff. It is so ordered.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and JOHNSON, JJ., concur.